**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

BRIGHT DRIVE HCS LLC

    Plaintiff,                           Case No:

    v.

SOUTHEAST DIAGNOSTIC LABORATORIES LLC
GLOBAL DIAGNOSTIC LABS, LLC d/b/a
GLOBAL7 DIAGNOSTICS and
DANIEL B. LIPTON, individually

    Defendants.

_____

**COMPLAINT**

**PRELIMINARY STATEMENT**

    This civil action is brought by Plaintiff, BRIGHT DRIVE HCS LLC, ("Bright Drive") against SOUTHEAST DIAGNOSTIC LABORATORIES LLC ("Southeast"), GLOBAL DIAGNOSTIC LABS, LLC, ("Global") and DANIEL B. LIPTON, individually ("Lipton"), (collectively, "Defendants"), for breach of contract, unjust enrichment, account stated and attorneys' fees.

**PARTIES**

    1.    Bright Drive is a for profit foreign limited liability company organized and existing under the laws of the State of New York with its principal office at 107 Prospect Street, Suite 1, Schoharie, New York 12157.

2.      Each of Bright Drive's members are residents of the State of New York.

3.      Southeast is a domestic limited liability company organized and existing under the laws of the State of Georgia with its principal office at 4960 Peachtree Industrial Boulevard, Suite 220, Norcross, Georgia 30071, County of Gwinnet.

4.      Southeast does business as Global7 Diagnostics.

5.      Southeast is wholly owned by Lipton.

6.      Global is a for profit domestic limited liability company organized and existing under the laws of the State of Georgia with its principal office at 4960 Peachtree Industrial Boulevard, Suite 220, Norcross, GA 30071, County of Gwinnet.

7.      Global does business as Global7 Diagnostics.

8.      Global is wholly owned by Lipton.

9.      Lipton is a resident of the State of Georgia.

10.     Upon information and belief, each of the Defendants individually and all Defendants collectively performed the acts complained of and/or conspired and acted in concert with the other Defendants to commit these wrongs, as alter egos of one another and, as such, are jointly and severally liable for Plaintiff's damages.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction, pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different States.

12.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Southeast's and Global's principal place of business is in Gwinnet County, Georgia and Lipton is a resident of the State of Georgia.

## FACTUAL ALLEGATIONS

13.     Southeast is engaged in the provision of health care and related services to its patients.

14.     Bright Drive provides business and support services, including patient billing and claims processing services to persons and entities engaged in the delivery of health care and related services to patients.

15.     Southeast desired to engage Bright Drive to provide patient billing and claims processing services (collectively referred to as "Services").

16.     On or about March 6, 2020, Bright Drive and Southeast entered into a Medical Billing Services Agreement (the "Agreement"), pursuant to which Bright Drive agreed to provide Services in exchange for a fee, and other terms and conditions.

17.     Lipton executed the Agreement on behalf of Southeast.

3

18.     At all times, Lipton has held himself out as the sole owner of Southeast, directing all decisions with respect to the Agreement.

19.     Lipton, prior to and at the time of executing the Agreement, verbally assured and represented to Bright Drive that Southeast will abide by the Agreement and pay Bright Drive in full as agreed upon, which representations induced Bright Drive to provide to Southeast the agreed upon Services.

20.     According to the Agreement, all funds collected by Bright Drive as a result of its Services were to be deposited into a bank account held in the name of Southeast at a bank mutually agreed on ("Client Account").

21.     In consideration of the Services provided by Bright Drive, Southeast agreed to a sliding scale payment between five percent (5%) and three and half percent (3.5%) of the total revenue collected for primary, secondary and patient payments if Bright Drive has contributed to the collections of revenues for the months of service under the Agreement (the "Service Fee").

22.     The Agreement set forth the following fee schedule:

  a.  < $1,000,000.00 USD 5.0% of all net collections per
       month.

  b.  > $1,000,000.00 USD - < $2,000,000.00 USD 4.5 %
       of all net collections per month.

  c.  > $2,000,000.00 USD - < $3,000,000.00 USD 4.0 %
       of all net collections per month.

4

d.  > $3,000,000.00 USD 3.5% of all net collections per
month.

23.     Pursuant to the Agreement, the parties acknowledged that the Service

Fee, plus expenses, as adjusted from time to time represented the fair market value

of the Services provided by Bright Drive to Southeast.

24.     Additionally, it was agreed that Southeast was not prevented from

adopting policies, practices, procedures, patient fees or otherwise making business

decisions provided that such actions would not prohibit Bright Drive from enforcing

the terms of the Agreement.

25.     The term of the Agreement commenced on March 6, 2020 and

continued for a period of 12 months, automatically renewing each year for an

additional 12-month term.

26.     The Agreement is governed by the laws of the State of New York

without regard to the principals of the conflict of law.

27.     Pursuant to Section 10.1(k) of the Agreement, in the event a legal action

or other proceeding is commenced to enforce any of its terms, or due to any dispute,

breach, default or misrepresentation in connection with any provision therein, the

prevailing party shall be entitled to recover reasonable attorney fees, expenses and

court costs, including those incidents to arbitration, appeal, bankruptcy and post-

judgment proceedings.

28.    From the commencement of the Agreement to the present, Bright Drive has consistently provided Services in accordance with the Agreement.

29.    Although the Agreement required that the funds it collected for Southeast were to be deposited into a Client Account, Lipton refused to honor this term and required that all funds be deposited directly by the payor into Southeast's bank account.

30.    Bright Drive did not have access to the bank account, even to perform routine accountings as it does for its other clients.

31.    In or about August 2020, Lipton advised Bright Drive that going forward, medical billing and claims processing must be done in the name of his other company, Global, instead of Southeast.

32.    Lipton, as sole member, formed Global on February 26, 2020.

33.    Global is also engaged in the provision of health care and related services to its patients.

34.    Lipton used Global and Southeast interchangeably when submitting claims for processing.

35.    Upon information and belief, Lipton used Global to service the same clients that Southeast had been servicing.

36.    Upon information and belief, Lipton carried on both Global's and Southeast's business as Global7.

37.     Upon information and belief, Lipton's intention in forming Global was to divert assets away from Southeast.

38.     Upon information and belief, Lipton's intention in using Global instead of Southeast to process claims was to divert assets away from Southeast.

39.     Upon information and belief, Southeast was experiencing financial difficulty and Lipton wanted to prevent creditors from gaining access to Southeast's assets.

40.     Lipton advised Bright Drive that Southeast was in a dispute with its landlord which resulted in litigation.

41.     Lipton advised Bright Drive that Southeast's landlord had obtained a judgment against Southeast and was attempting to collect on it by garnishing its bank account.

42.     Lipton told Bright Drive that Bright Drive needed to switch all of the claims processing from Southeast's name to Global's name and bank account to avoid the garnishment.

43.     Lipton requested Bright Drive to file the necessary paperwork with Medicare and private payors to notify them of a change in the name of company from Southeast to Global.

44.     Lipton requested Bright Drive to file the necessary paperwork with Medicare to change the payment of Medicare claims from Southeast's bank account to Global's bank account.

45.     Lipton requested Bright Drive to file the necessary paperwork to redirect payment of all other private payor claims from Southeast's bank account to Global's bank account.

46.     Bright Drive was successful in redirecting payment of private payor claims from Southeast's bank account to Global's bank account.

47.     Bright Drive was unable to redirect payment of Medicare claims from Southeast's bank account to Global's bank account.

48.     Despite the purposeful depletion of Southeast's bank account, Lipton provided assurances that he and Global would be responsible for Southeast's obligations pursuant to the Agreement.

49.     In reliance on Lipton's assurances, Bright Drive agreed to continue to provide said Services.

50.     Bright Drive prepared all bills, completed all claims forms in accordance with third-party payor agreements and submitted all claims for reimbursement.

51.     Bright Drive further managed all claims by responding to explanation of benefit forms and other inquiries from payors and patients.

52.     Bright Drive negotiated on behalf of Defendants to settle, waive or write-off accounts receivables as directed by Lipton, or otherwise permitted by law or contract.

53.     Bright Drive managed all claims resubmissions and appeals in the best interest of Defendants.

54.     Bright Drive continued to invoice Southeast for the Services provided.

55.     In or about February 2021, Southeast defaulted on its obligation to pay the Service Fee and has continued to default on its obligations through the present day.

56.     On or about February 5, 2021, Bright Drive sent Lipton and Southeast Invoice # 2108 for $11,660.83, representing the outstanding Service Fee owed to Bright Drive for Services rendered in January 2021.

57.     Southeast's payment of Invoice # 2108 was due February 15, 2021.

58.     On or about March 4, 2021, Bright Drive sent Lipton and Southeast Invoice # 2125 for $12,085.21, representing the outstanding Service Fee owed to Bright Drive for Services rendered in February 2021.

59.     Southeast's payment of Invoice # 2125 was due March 14, 2021.

60.     On or about April 5, 2021, Bright Drive sent Lipton and Southeast Invoice # 2135 for $85,720.61, representing the outstanding Service Fee owed to Bright Drive for Services rendered in March 2021.

61.     Southeast's payment of Invoice # 2135 was due April 15, 2021.

62.     On or about May 5, 2021, Bright Drive sent Lipton and Southeast Invoice # 2158 for $87,109.88, representing the outstanding Service Fee owed to Bright Drive for Services rendered in April 2021.

63.     Southeast's payment of Invoice # 2158 was due May 15, 2021.

64.     On or about May 5, 2021, Bright Drive sent Lipton and Southeast a statement demanding payment on the balances due on Invoice #s 2108, 2125, 2135, 2158 plus $91.38 in finance charges, representing a 1% service charge per month on overdue invoices, for a total sum of $196,667.91. ("Statement").

65.     On or about May 5, 2021, Bright Drive also sent Lipton and Southeast Invoice # 2179 for $15,360.93, representing the outstanding Service Fee owed to Bright Drive for Services rendered in the beginning of May 2021.

66.     Southeast's payment of Invoice # 2179 was due May 15, 2021.

67.     Neither Southeast nor Lipton issued payment on Invoices #s 2108, 2125, 2135, 2158 and 2179.

68.     On or about June 4, 2021, Bright Drive sent Lipton and Southeast Invoice # 2208 for $15,946.33, representing the outstanding Service Fee owed to Bright Drive for the remainder of May 2021.

69.     Southeast's payment of Invoice # 2208 was due June 14, 2021.

70.    Defendants have not remitted payment or made any representation that payment is forthcoming.

71.    Bright Drive satisfactorily performed all its obligations under the Agreement by providing the Services agreed upon, but Southeast has breached its contractual obligations owed to Bright Drive.

72.    As result of Southeast's continued and ongoing failures to abide by its contractual obligations, Bright Drive has suffered damages in the principal sum of $212,614.24, plus attorney fees, expenses and costs in accordance with Section 10.1(k) of the Agreement, and any other damages available to Bright Drive under New York law.

## Personal Liability of Lipton

73.    Upon information and belief, Lipton is the sole member, shareholder, and owner of Southeast.

74.    Lipton failed to adhere to corporate formalities, inadequately capitalized Southeast and, upon information and belief, commingled the assets of Southeast with his own.

75.    Lipton has exercised such complete dominant control over Southeast so much so that Southeast serves as the alter ego of Lipton.

76.     Lipton was Bright Drive's main point of contact, negotiated the terms of the Agreement, agreed to the terms of the Agreement and processed Bright Drive's invoices up until the time of breach.

77.     When Bright Drive contracted with Southeast, Bright Drive was made to believe that Southeast was a viable entity with assets or the availability of assets to meet its obligations pursuant to the Agreement.

78.     Southeast has allowed Lipton to usurp, assert and maintain responsibility of the financial control and day-to-day operations and decision-making for Southeast.

79.     Lipton intentionally prevented Bright Drive from having any control over the funds it collected by refusing to deposit them into a Client Account per the terms of the Agreement.

80.     Lipton intentionally diverted funds collected by Bright Drive on behalf of Southeast away from Southeast.

81.     Lipton intentionally diverted funds collected by Bright Drive on behalf of Southeast to Global for the purpose of avoiding Southeast's obligations under the Agreement, and its obligations to other creditors.

82.     In diverting funds away from Southeast to Global, Lipton intentionally made Southeast insolvent, holding no funds or other assets of its own, for the purpose

of avoiding Southeast's obligations under the Agreement, and its obligations to other creditors.

83.    In diverting funds away from Southeast, Lipton intentionally undercapitalized Southeast for the purpose of avoiding Southeast's obligations under the Agreement, and its obligations to other creditors.

84.    Lipton used his control of Southeast to further his own personal gain rather than to further Southeast's business.

85.    The individual influence of Lipton on Southeast has blurred the line between individual and corporation and has subjected Lipton to personal and individual liability for the actions and/or inactions of Southeast, as detailed herein.

86.    There has become such unity of ownership and interest that any corporate separateness between Southeast and Lipton ceased and/or never existed.

87.    Upon information and belief, Lipton was, in effect, doing business in his individual capacity, moving his personal funds in and out of Southeast's name without regard to corporate formalities and did so for Lipton's immediate convenience.

88.    Lipton failed to adhere to corporate formalities and commingled the assets of Southeast's with Global for the purpose of concealing Southeast's assets from creditors and preventing Southeast from performing its contractual obligations.

89.    Upon information and belief, Lipton failed to adhere to corporate formalities and commingled the assets of Global with his own.

90.    Upon information and belief, Lipton has exercised such complete dominant control over Global so much so that Global serves as the alter ego of Lipton and Southeast.

91.    Upon information and belief, Global has allowed Lipton to usurp, assert and maintain responsibility of the financial control and day-to-day operations and decision-making for Global.

92.    Upon information and belief, Lipton was, in effect, doing business in his individual capacity, moving his personal funds in and out of Global's name without regard to corporate formalities and did so for Lipton's immediate convenience.

93.    Upon information and belief, the individual influence of Lipton on Global has blurred the line between individual and corporation and has subjected Lipton to personal and individual liability for the actions and/or inactions of Global, as detailed herein.

94.    Upon information and belief, there has become such unity of ownership and interest that any corporate separateness between Global, Southeast and Lipton ceased and/or never existed.

95.     Through such domination, Lipton abused the privilege of doing business in the corporate form to perpetrate a wrong against Bright Drive.

96.     Lipton personally and individually participated in the conduct that is complained of in this Complaint.

97.     As result of Lipton's complete dominance and control of Southeast and diversion of assets away from Southeast in order to avoid its creditors and contractual obligations, Bright Drive has suffered damages in the principal sum of $212,614.24, plus attorney fees, expenses and costs in accordance with Section 10.1(k) of the Agreement, and any other damages available to Bright Drive under New York law.

98.     As result of Lipton's complete dominance and control of Global, Global has benefited from the Services Bright Drive provided and retained the payments resulting from those Services to the detriment of Bright Drive.

99.     As result of Lipton's complete dominance and control of Global, Lipton has used Global to usurp and control Southeast's assets in order to avoid Southeast's contractual obligations to the detriment of Bright Drive and as a result, Bright Drive has suffered damages in the principal sum of $212,614.24.

100.     As result of Lipton's complete dominance and control of Global, Global has been unjustly enriched to the detriment of Bright Drive and as a result, Bright Drive has suffered damages in the principal sum of $212,614.24.

101.   As such, Lipton is personally and individually liable for the actions, inactions, omissions, commissions, debts, liabilities and conduct of Southeast and Global, specifically for the events and claims set forth in this Complaint.

102.   Bright Drive seeks to have this Court equitably disregard the corporate form and hold Lipton personally responsible for the unsatisfied obligations and wrongs of Southeast and Global.

## AND FOR PLAINTIFF'S FIRST CAUSE OF ACTION
### (Breach of Contract against Southeast and Lipton)

103.   Bright Drive incorporates by reference the above paragraphs as if the same were fully set forth herein at length.

104.   At all relevant times, Bright Drive and Southeast had a valid existing and enforceable written Agreement.

105.   Bright Drive satisfactorily performed all its obligations under the Agreement in providing Services to Southeast upon Lipton's request.

106.   Southeast failed to perform its obligations under the Agreement in failing to pay Bright Drive the Service Fee for Services rendered by Bright Drive totaling $212,614.24.

107.   Despite repeated and continued demands by Bright Drive for full payment, Southeast has failed and refused to pay any portion of the principal sum of $212,614.24 due to Bright Drive as of the date of the filing of this Complaint.

108.   Southeast failed to perform its obligations under the Agreement in adopting policies, practices, procedures and making a business decision to divert funds from itself to Global.

109.   Such action has inhibited Bright Drive's ability to obtain payment from Southeast for its Services.

110.   Southeast failed to perform its obligations under the Agreement in its refusal to cooperate with Bright Drive in good faith to carry out its obligations under the Agreement to pay the Service Fee associated with the Services provided by Bright Drive.

111.   As a result of Southeast's continued and ongoing failures to abide by its contractual obligations, Bright Drive has suffered damages in the principal sum of $212,614.24, plus attorney fees in accordance with Section 10.1(k) of the Agreement, and any other damages available to Bright Drive under New York law.

112.   As a result of Lipton's complete dominance and control of Southeast in disregard of the corporate form, Lipton must be held individually responsible for Southeast's breach of the Agreement.

113.   As a result of the unity of ownership and interest between Lipton and Southeast such that any corporate separateness between Southeast and Lipton ceased and/or never existed, Lipton must be held individually responsible for Southeast's breach of the Agreement.

114.   Lipton must be held individually responsible for Southeast's breach of the Agreement because of his calculated and intentional actions to make Southeast insolvent for the purpose of avoiding Southeast's obligations under the Agreement and its obligations to other creditors.

115.   Accordingly, Southeast and Lipton are jointly and severally liable for Plaintiff's damages.

## AND FOR PLAINTIFF'S SECOND CAUSE OF ACTION
### (Unjust Enrichment against all Defendants)

116.   Bright Drive incorporates by reference the above paragraphs as if the same were fully set forth herein at length.

117.   Bright Drive performed Services in accordance with the Agreement on the belief that Defendants would compensate Bright Drive for same.

118.   In accordance with the Agreement, Bright Drive is entitled to $212,614.24 for Services provided to Defendants.

119.   By reason of the acts of Defendants, and without any wrongdoing on the part of Bright Drive, Defendants have been unjustly enriched to Bright Drive's detriment.

120.   As a direct and proximate result of Defendants' failure to remit payment to Bright Drive, Defendants have been unjustly enriched in the amount of $212,614.24 for Services rendered to Defendants by Bright Drive.

121.   In light of the foregoing, Bright Drive has suffered damages in the amount of $212,614.24 together with attorney fees in accordance with Section 10.1(k) of the Agreement.

122.   Accordingly, Defendants are jointly and severally liable for Plaintiff's damages.

## AND FOR PLAINTIFF'S THIRD CAUSE OF ACTION
### (Account Stated against Southeast and Lipton)

123.   Bright Drive incorporates by reference the above paragraphs as if the same were fully set forth herein at length.

124.   Bright Drive forwarded to Southeast and Lipton Invoice #s 2108, 2125, 2135, 2158, 2179 and 2208 demanding payment.

125.   Bright Drive forwarded to Southeast and Lipton a Statement demanding payment on Invoice #s 2108, 2125, 2135, 2158 plus $91.38 in finance charges.

126.   On May 10, 2021 Bright Drive, through counsel, sent Southeast and Lipton the Demand Letter, demanding payment on Invoices # 2108, 2125, 2135, 2158 and 2179, plus finance charges.

127.   There is presently due and owing $212,614.24 to Bright Drive from Southeast and Lipton.

128.   Southeast has failed to remit payment for Invoices # 2108, 2125, 2135, 2158, 2179, and 2208 plus finance charges.

129.   Lipton has failed to remit payment for Invoices # 2108, 2125, 2135, 2158, 2179, and 2208 plus finance charges.

130.   In light of the foregoing, Bright Drive has suffered damages in the amount of $212,614.24 together with attorney fees in accordance with Section 10.1(k) of the Agreement.

131.   As a result of Lipton's complete dominance and control of Southeast in disregard of the corporate form, Lipton must be held individually responsible for Southeast's failure to remit payment.

132.   As a result of the unity of ownership and interest between Lipton and Southeast such that any corporate separateness between Southeast and Lipton ceased and/or never existed, Lipton must be held individually responsible for Southeast's failure to remit payment.

133.   Lipton must be held individually responsible for Southeast's failure to remit payment because of his calculated and intentional actions to make Southeast insolvent for the purpose of avoiding Southeast's obligations under the Agreement and its obligations to other creditors.

134.   Accordingly, Southeast and Lipton are jointly and severally liable for Plaintiff's damages.

## AND FOR PLAINTIFF'S FOURTH CAUSE OF ACTION
### (Attorneys' Fees and Costs against Southeast and Lipton)

135.   Bright Drive incorporates by reference the above paragraphs as if the same were fully set forth herein at length.

136.   Southeast's failure to pay for Services provided by Bright Drive is a material breach of the Agreement.

137.   Bright Drive has commenced this action to enforce the terms of the Agreement as a result of Southeast's breach.

138.   In the event any legal action is brought for the enforcement of the Agreement, the prevailing party is entitled to reasonable attorney fees, expenses and costs.

139.   Accordingly, in the event Bright Drive is awarded judgment against Southeast, Bright Drive shall be entitled to its reasonable attorneys' fees expenses and costs associated with this litigation.

140.   As a result of Lipton's complete dominance and control of Southeast in disregard of the corporate form, Lipton must be held individually responsible for Bright Drive's reasonable attorneys' fees expenses and costs associated with this litigation.

141.   As a result of the unity of ownership and interest between Lipton and Southeast such that any corporate separateness between Southeast and Lipton ceased

and/or never existed, Lipton must be held individually responsible for Bright Drive's reasonable attorneys' fees expenses and costs associated with this litigation.

142.   Lipton must be held individually responsible for Bright Drive's reasonable attorneys' fees expenses and costs associated with this litigation because of his calculated and intentional actions to make Southeast insolvent for the purpose of avoiding Southeast's obligations under the Agreement and its obligations to other creditors.

143.   Accordingly, Southeast and Lipton are jointly and severally liable for Plaintiff's damages.

WHEREFORE, Plaintiff, BRIGHT DRIVE HCS LLC, demands judgment against the Defendants SOUTHEAST DIAGNOSTIC LABORATORIES LLC, GLOBAL DIAGNOSTIC LABS, LLC, and DANIEL B. LIPTON as follows:

(a)   On its first cause of action, damages in the amount of $212,614.24 together with costs and attorneys' fees;

(b)   On its second cause of action, damages in the amount of $212,614.24 together with costs and attorneys' fees;

(c)   On its third cause of action, damages in the amount of $212,614.24 together with costs and attorneys' fees;

(d)   On its fourth cause of action, damages in amount to be determined at the conclusion of trial.

(e)    An award to Plaintiff of such other and further relief as the Court may deem just and proper.

DATED:    August 16, 2021

**LIPPES MATHIAS WEXLER FRIEDMAN LLP**

/s Brendan H. Little
Brendan H. Little, Esq.
Attorneys for Plaintiff
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
P: 716-853-5100
F: 716-853-5199
E: blittle@lippes.com